IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 14–cv–01199–WYD–KMT

UNITED STATES OF AMERICA,

    Plaintiff,

v.

GREGORY MARTENS, individually and as trustee of In God We Trust,
IN GOD WE TRUST, a trust,
JENNIFER MARTENS,
BANK OF AMERICA,
COLORADO DEPARTMENT OF REVENUE,

    Defendants.

_____

**RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**
_____

**Magistrate Judge Kathleen M. Tafoya**

    This case comes before the court on Plaintiff United States of America's "Motion for Summary Judgment and, Alternatively, as to 'In God We Trust,' for Entry of Default Judgment." (Doc. No. 48, filed June 12, 2015). Defendant In God We Trust ("Trust") filed its response on July 6, 2015. (Doc. No. 51 [Trust's Resp].) Defendant Gregory Martens ("Martens") filed a response on July 7, 2015. (Doc. No. 52 [Marten's Resp.].) Plaintiff filed its reply on July 20, 2016. (Doc. No. 53 [Reply].)

**STATEMENT OF CASE**

    Plaintiff filed its Amended Complaint on November 14, 2014, seeking to reduce to judgment federal tax assessments against Plaintiff Gregory Martens for five tax years and to

foreclose those tax liens against the real property at issue in this case.  (*See* Doc. No. 23 [Am. Compl.].)

**STATEMENT OF UNDISPUTED FACTS[1]**

*<u>Background</u>*

1.      Defendants Gregory Martens and Jennifer Martens reside in Aurora, Colorado, at 4262 South Nucla Way, a residence they have maintained since 1995.  (*See* Mot., Attach. 7 [Bailey Decl.], Ex. 1 [Martens Depo.] at 28:11–15.)

2.      Defendant Gregory Martens worked in the printing industry from the 1980s through the early 2000s.  (Martens Depo. at 12:10–22:13, 86:3–20.)

3.      In the early 1990s, Defendant Martens made a decision that he would no longer report or pay federal income taxes.  (*Id.* at 67:13–68:22.)

4.      The Internal Revenue Service ("IRS") took note of Defendant Martens' failure to file or pay his taxes by the mid-1990s and informed Defendant Martens at that time that he was in violation of the law. (*Id.* at 68:23–69:5; 76:12–25.)

5.      Defendant Martens responded to the IRS's notices with correspondence asserting that he believed the federal income tax to be "voluntary."  (*Id.* at 70:21–71:8.)

6.      Defendant Martens characterizes his filing of returns since the early 1990s as sporadic, though he cannot recall for what periods he may have filed returns.  (*Id.* at 74:3–75:11.)

---

[1] Defendant Martens failed to comply with this Court's Practice Standards and to provide a Response to Movant's Material Facts.

### *Gregory Martens' Federal Income Tax Liabilities*

7. The IRS initiated an examination to determine the federal income tax liabilities for Defendant Martens for certain periods. This process culminated in the assessments of taxes for the years 1997 through 2001. (*See* Mot., Attach 1 [Dyson Decl.], ¶ 5.)

8. The examination was necessitated by Defendant Martens' failure to file returns for the tax periods 1997 through 2001. (*Id.*, ¶¶ 6, 8.)

9. Due to Defendant Martens' failure to report income or cooperate in the examination process, the IRS computed his federal income tax liabilities pursuant to Section 6213 of the Internal Revenue Code. (*Id.*, ¶ 7.)

10. As part of this process, IRS issued statutory notices of deficiency to Defendant Martens with respect to the liabilities. These notices included information regarding the basis for the findings of deficiency. (*Id.*, ¶ 9.)

11. On the dates, and in the amounts set forth below, a duly authorized delegate of the Secretary of the Treasury made timely federal income tax assessments against Defendant Martens:

| Tax Period | Tax Type | Assessment Date | Assessments (Type) | Balance Due (period total for tax, penalties, and interest as of June 30, 2015) |
|---|---|---|---|---|
| 1997 | 1040 | 08/04/2003 | $  5,071.00  (Tax) | $16,580.13 |
|  |  | 08/04/2003 | $     235.46  (Estimated Tax Penalty) |  |

| Tax Period | Tax Type | Assessment Date | Assessments (Type) | Balance Due (period total for tax, penalties, and interest as of June 30, 2015) |
|---|---|---|---|---|
| | | 08/04/2003 | $ 2,602.63 (Interest Assessed) | |
| | | 08/04/2003 | $ 1,005.30 (Late Filing Penalty) | |
| | | 08/04/2003 | $ 1,117.00 (Late Payment Penalty) | |
| 1998 | 1040 | 08/04/2003 | $ 4,786.00 (Tax) | $16,385.89 |
| | | 08/04/2003 | $ 1,076.85 (Late Filing Penalty) | |
| | | 08/04/2003 | $ 1,005.06 (Late Payment Penalty) | |
| | | 08/04/2003 | $ 2,142.57 (Interest Assessed) | |
| | | 08/04/2003 | $ 219.01 (Estimated Tax Penalty) | |
| | | 08/09/2010 | $ 191.44 (Late Payment Penalty) | |
| 1999 | 1040 | 08/04/2003 | $ 4,993.00 (Tax) | $15,811.09 |
| | | 08/04/2003 | $ 1,123.43 (Late Filing Penalty) | |
| | | 08/04/2003 | $ 241.64 (Estimated Tax Penalty) | |
| | | 08/04/2003 | $ 1,588.81 (Interest Assessed) | |

| Tax Period | Tax Type | Assessment Date | Assessments (Type) | Balance Due (period total for tax, penalties, and interest as of June 30, 2015) |
|---|---|---|---|---|
| | | 08/04/2003 | $     748.95  (Late Payment Penalty) | |
| 2000 | 1040 | 09/20/2004 | $  5,639.00  (Tax) | $16,341.40 |
| | | 09/20/2004 | $  1,268.78  (Late Filing Penalty) | |
| | | 09/20/2004 | $     303.29  (Estimated Tax Penalty) | |
| | | 09/20/2004 | $  1,451.71  (Interest Assessed) | |
| | | 09/20/2004 | $     507.51  (Late Payment Penalty) | |
| | | 08/09/2010 | $     902.23  (Late Payment Penalty) | |
| 2001 | 1040 | 09/27/2004 | $  4,353.00  (Tax) | $5,243.74 |
| | | 09/27/2004 | $     447.75  (Late Filing Penalty) | |
| | | 09/27/2004 | $       59.70  (Late Payment Penalty) | |
| | | 09/27/2004 | $     317.15  (Interest Assessed) | |
| | | 08/09/2010 | $     437.80  (Late Payment Penalty) | |

(*Id.*, ¶¶ 5, 10 & Ex. 2.)

12.     Despite notice and demand for payment of the assessments set forth in paragraph 11 above, Defendant Martens has neglected, refused, or failed to pay the income tax assessments against him and there remains due and owing to the United States on those assessments the total sum of $70,362.25 plus accrued interest, penalties and statutory additions as provided by law, from June 30, 2015.  (*Id.*, ¶¶ 11, 13.)

### *The Subject Real Property and Federal Tax Liens*

13.     The real property that is the subject of this action is commonly referred to as 4262 South Nucla Way, Aurora, Colorado (the "real property at issue") and is more particularly described as "Lot 5, Block 15, Mission Viejo Subdivision Filing No. 11, County of Arapahoe, State of Colorado."  (*See* Dyson Decl., ¶ 15.)

14.     Defendant Martens purchased this home in the fall of 1995, taking out a mortgage loan of $107,000 and paying down $6,000. (Bailey Decl., Ex. 1 at. 27:17–28:15.)

15.     Defendants Gregory Martens and Jennifer Martens acquired title to the real property at issue via Warranty Deed recorded with the Arapahoe County Clerk and Recorder's Office on November 4, 1995.  (*See* Dyson Decl., ¶ 16, Ex. 4.)

16.     Defendants Gregory Martens and Jennifer Martens executed a quitclaim deed purportedly transferring their interest in the real property at issue to the entity "In God We Trust" on January 2, 1996.  (*See id.*, ¶ 17, Ex. 4.)

17.     "In God We Trust" is an entity created by Gregory Martens in 1995 for "estate planning" purposes.  (Bailey Decl., Ex. 1 at 29:18–30:2, Ex. 2 [Trust Instrument].)

18.     Other than Gregory Martens and his brother Michael Martens, there are no signatures on the "Trust Instrument" creating the Trust, nor is there any written indication of the

involvement of anyone with the Trust other than Gregory Martens from its formation until this litigation. (*Id.* at 29:3–29:17; 38:7–19; 39:4–42:21, Ex. 2.)

19. The Trust did not pay consideration for the property. (*Id.*, Ex. 1 at 63:13–18, 65:6–66:6, Ex. 3 [Interrog. Resps.]).

20. At the time Defendant Martens transferred title of the subject property to the Trust in 1996 he had begun accruing federal income tax debts and was insolvent. (*See id.* at 67:13–15, 68:19–22, 70:3–8, 70:21–71:8, 91:4–93:18; Dyson Decl., ¶ 18.)

21. Since its purchase, only the Martens have exercised control over and resided in the property. (Bailey Decl., Ex. 1 at 28:11–19, 51:4–52:15, Ex. 2.)

22. Since its purchase, all mortgage payments and utilities payments have been made by the Martens either directly or by use of a checking account opened by Defendant Martens in the name of the Trust. (*Id.* at 47:9–48:2, 44:20–45:7; 47:2–48:2.)

23. Defendant Martens admits that there are no minutes or records of meetings of the Trust, but asserts that "meetings of one" took place when he made payments on behalf of the trust. (*Id.* at 42:7–21.)

24. Beginning on August 2, 2005, the United States recorded a number of Notices of Federal Tax Lien ("NFTLS") in the Arapahoe County Clerk and Recorder's Office for Defendant Gregory Martens' liabilities set forth above. (*See* Dyson Decl., ¶ 18, Ex. 5.)

25. The United States also recorded Notices of Federal Tax Lien for the tax periods 1994, 1995 and 1996. Defendant Martens accrued these debts in through his failure to report and pay over his federal income taxes for those periods. (*See id.*, ¶ 19.)

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of showing an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). "Once the moving party meets this burden, the burden shifts to the nonmoving party to demonstrate a genuine issue for trial on a material matter." *Concrete Works, Inc. v. City & County of Denver*, 36 F.3d 1513, 1518 (10th Cir. 1994) (citing *Celotex*, 477 U.S. at 325). The nonmoving party may not rest solely on the allegations in the pleadings, but must instead designate "specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324; *see also* Fed. R. Civ. P. 56(c). A disputed fact is "material" if "under the substantive law it is essential to the proper disposition of the claim." *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir.1998) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A dispute is "genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the nonmoving party. *Thomas v. Metropolitan Life Ins. Co.*, 631 F.3d 1153, 1160 (10th Cir. 2011) (citing *Anderson*, 477 U.S. at 248).

When ruling on a motion for summary judgment, a court may consider only admissible evidence. *See Johnson v. Weld County, Colo.*, 594 F.3d 1202, 1209–10 (10th Cir. 2010). The factual record and reasonable inferences therefrom are viewed in the light most favorable to the party opposing summary judgment. *Concrete Works*, 36 F.3d at 1517. Moreover, because Defendant Gregory Martens is proceeding *pro se*, the court, "review[s] his pleadings and other papers liberally and hold[s] them to a less stringent standard than those drafted by attorneys."

*Trackwell v. United States*, 472 F.3d 1242, 1243 (10th Cir. 2007) (citations omitted); *see also Haines v. Kerner*, 404 U.S. 519, 520–21 (1972) (holding allegations of a *pro se* complaint "to less stringent standards than formal pleadings drafted by lawyers"). At the summary judgment stage of litigation, a plaintiff's version of the facts must find support in the record. *Thomson v. Salt Lake Cnty.*, 584 F.3d 1304, 1312 (10th Cir. 2009). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007); *Thomson*, 584 F.3d at 1312.

## ANALYSIS

### A.   *Tax Assessments Reduced to Judgment*

In an action to collect federal taxes from unreported income, the government generally establishes a *prima facie* case when it shows timely assessment of the tax due supported by a minimal evidentiary foundation, at which point a presumption of correctness arises. *See United States v. McMullin*, 948 F.2d 1188 (10th Cir. 1991). A presumption of correctness attaches to the assessment once some substantive evidence is introduced demonstrating the taxpayer received unreported income. (*Id.*) This presumption will permit judgment in the government's favor unless the opposing party produces substantial evidence overcoming it. *Id.*; *see also United States v. Brown*, 348 F.3d 1200 (10th Cir. 2003) (The taxpayer bears the burden of establishing an error in the Internal Revenue Service's determination of tax due).

The only evidence disclosed by any of the parties in this matter supports Plaintiff United States' claims against Defendant Martens with regard to the federal income taxes assessed

against him for the 1997 through 2001 tax periods.  The United States submits the Certificate of Assessments and Payments ("Forms 4340") to prove the 1997, 1998, 1999, 2000, and 2001 tax liabilities.  (*See* Dyson Decl., ¶¶ 5, 10 & Ex. 2.)  Forms 4340, "are routinely used to prove that tax assessment has in fact been made [and] are presumptive proof of a valid assessment." *Guthrie v. Sawyer*, 970 F.2d 733, 737 (10th Cir. 1992) (citations and internal quotations omitted).  The Form 4340 is highly probative and, in the absence of contrary evidence, is sufficient to establish that an assessment was properly made and that notices and demand for payment were sent.  *Hughes v. United States*, 953 F.2d 531, 535 (9th Cir. 1992).  The amount of the taxes owed is also proved by the Form 4340 for the taxpayer.  *Long v. United States*, 972 F.2d 1174, 1181 (10th Cir. 1992); *McCallum v. United States*, 970 F.2d 66, 70 (5th Cir. 1992); *Geiselman v. United States*, 961 F.2d 1, 4–5 (1st Cir. 1992); *United States v. Chila*, 871 F.2d 1015, 1018 (11th Cir. 1988).

The Forms 4340 submitted with this motion, Exhibit 2 to the Dyson Declaration, are sufficient evidence to establish that the tax liabilities were properly assessed against Defendant Martens (26 U.S.C. §§ 6201–6203), and that the notices and demand for payment of the liabilities were properly sent (26 U.S.C. §§ 6303(a) and 6321).  *See*, *e.g.*, *United States v. Chila*, 871 F.2d at 1017–1019.  Here, however, the determinations and assessments of Defendant's tax liabilitiesare further supported by the declaration of Revenue Officer Steve Dyson, records obtained through discovery, and the deposition testimony of Defendant Martens.  Defendant Martens has been presented ample opportunity to provide a substantive basis to challenge the assessments made pursuant to the audit examination but has failed to do so.  Defendant Martens has admitted to the receipt of income as a full time worker during the 1997 through 2001 period.

10

(Bailey Decl., Ex. 1 at 12:10–22:13, 86:3–20.)  Defendant Martens also has admitted that he has failed to keep records of his income generating activities and to choosing not to file returns with the federal government.  (*Id.*, Ex. 4 at 2.)  Defendant Martens has asserted in this matter, and throughout his dealings with the IRS, that GAO reports which describe "inaccuracy" in some IRS record keeping practices in some fashion invalidate the assessments against him.  Not only do the reports have no such force of law, this proposition is based on a logical fallacy (informal fallacy of division) and contrary to the actual applicable law.

> When taxpayers fail to file returns or when they file returns substantially understating their income, and cannot produce records which provide the '[a]rithmetic precision . . . originally and exclusively in [their] hands,' an assessment is necessarily an estimate.

*Dodge v. Comm'r*, 981 F.2d 350, 353 (8th Cir. 1992) (citation omitted).

In his response, Defendant Martens suggests that the Court should disregard the Certificates of Assessments, Payments and Other Specified Matters (Forms 4340) that the government has submitted in support of its motion.  (Martens Resp. at 2–6.)  Defendant Martens argues that the United States must provide some additional proof that the Forms 4340 include "mathematical calculations (that) are accurate."  (*Id.* at 3.)  Under the controlling law, however, Forms 4340 are self-authenticating documents that "are routinely used to prove that tax assessment has in fact been made [and] are presumptive proof of a valid assessment."  *Guthrie*, 970 F.at 737 (citations and internal quotations omitted).  The Form 4340 is, in the absence of contrary evidence, sufficient to establish that an assessment was properly made, the amount owed, and that notices and demand for payment were sent.  *Long*, 972 F.2d 1174, 1181; *Hughes v. United States*, 953 F.2d 531, 535 (9th Cir. 1992).  Defendant Martens has provided no proof to show that the Forms 4340 are inaccurate.  The burden rests with Defendant Martens to show

some reason to doubt the validity of the Forms 4340, as they are considered *prima facie* valid evidence of the tax liability. *Sawyer*, 970 F.2d at 737. Defendant Martens has not met this burden.

In his response, Defendant Martens also asserts that the government has not provided "supporting documentation" for his tax liabilities, yet ignores the "support" provided by his own testimony. Defendant Martens has admitted that he worked full time (including over-time) in the printing business during the 1997 to 2001 period, that he received income and that he either did not file returns or could not recall doing so. (Mot., Attach. 7, Ex. 1 at 15:13–26:2.2.) These admissions are sufficient to establish that Defendant Martens is liable for taxes. Defendant Martens also has admitted that he has failed to keep records of his income generating activities and he chose not to file returns with the federal government. (*Id.*, Ex. 3, ¶ 4(a); 48-8 at 67:13–15.) "[A] taxpayer who has abandoned the advantage of mathematical precision by failing to keep adequate records cannot complain that the [IRS]'s assessment is based on estimates rather than proven amounts of unreported income". *Jones v. Comm'r*, 903 F.2d 1301, 1303 (10th Cir. 1990); *see also* 26 U.S.C. § 7491. Defendant Martens was required by law to keep the records that establish the proper income tax to be imposed and to file proper returns. 26 U.S.C. §§ 6001, 6011. That he refused to do so is not a defense to imposition and collection of tax based upon the IRS's best estimates in reconstructing his income.

**B.     *The United States Is Entitled to Foreclose Federal Tax Liens Against the Real Property***

Plaintiff asserts that the United States' liens may now be foreclosed because, other than Defendant Gregory Martens and the Trust, the parties having a putative interest in the subject property have either entered disclaimers (*see* Doc. No. 35, Jennifer Martens; Doc. No. 26, State

of Colorado), or have entered into an agreement regarding their priority of interest (*see* Doc. No. 36).

### 1.     *Federal Tax Liens*

Section 6321 of the Internal Revenue Code (26 U.S.C.) provides that after assessment and notice and demand and a taxpayer's failure to pay, a lien arises in favor of the United States in the amount of the assessment. The tax lien is all encompassing. It attaches to all property and rights to property of the taxpayer on the date the lien arises. 26 U.S.C. §§ 6321 and 6322; *Drye v. United States*, 528 U.S. 49, 55 (1999). In addition, the tax lien attaches to any property interest subsequently acquired by the taxpayer while the lien is in force. *Glass City Bank v. United States*, 326 U.S. 265, 267–268 (1945). The tax lien continues in full force until the liability is paid in full or becomes unenforceable due to the lapse of time. 26 U.S.C. §6322; *United States v. Cache Valley Bank*, 866 F.2d 1242, 1244 (10th Cir. 1989). A tax lien of the United States is perfected upon assessment and further action need not be taken. *United States v. Vermont*, 377 U.S. 351, 352 (1964). Once a lien under 26 U.S.C. § 6321 has arisen, the United States may file an action to enforce the lien against any property in which the taxpayer has an interest. 26 U.S.C. § 7403.

As set forth above, the United States made assessments against, and notice and demand for payment on Defendant Martens for income tax liabilities for the years 1997 through 2001. . (*See* Mot., Dyson Decl., ¶¶ 5, 10 & Ex. 2.) A federal tax lien has been in effect since the liabilities were assessed against Martens. 26 U.S.C. §§ 6321 and 6322; *Drye*, 528 U.S. at 55. Because Martens has not paid his federal tax liabilities, the United States may foreclose those tax liens on any property in which Martens has an interest, including the real property at issue.

### 2.     *"In God We Trust" is a Nominee of Gregory Martens*

When a taxpayer's property or rights to property are held in the name of another, or are transferred to another but taxpayer retains beneficial ownership, the third party is said to be a "nominee" for the taxpayer.  W. Elliott, *Federal Tax Collections, Liens, and Levies* ¶ 9.10[1] (2d ed. 2003); S.R. Mather and P.H. Weisman, *Federal Tax Collection Procedure*, 638-2nd Tax Management Portfolio at A-105–A-106 (2000).  While there is no direct statutory authority providing for nominee liens, it is firmly established that a federal tax lien attaches to property held by a taxpayer's nominee.  *See G.M. Leasing Corp. v. United States*, 429 U.S. 338, 350–51 (1977); *United States v. Miller Bros. Constr. Co.*, 505 F.2d 1031, 1036 (10th Cir. 1974); *see also Scoville v. United States*, 250 F.3d 1198, 1202–1203 (8th Cir. 2001); *Oxford Capital Corp. v. United States*, 211 F.3d 280, 284 (5th Cir. 2000); *LiButti v. United States*, 107 F.3d 110, 120, 125 (2d Cir. 1997)); *Towe Antique Ford Foundation v. IRS*, 791 F. Supp.1450, 1454 (D. Mont. 1992); *Shades Ridge Holding Co. v. United States*, 888 F.2d 725, 728–29 (11th Cir. 1989). *See, generally*, S.R. Mather and P.H. Weisman, *Federal Tax Collection Procedure*, at  A-106.

The nominee theory arises from equitable principles and focuses on the relationship between the debtor and the property, and is concerned with determining the true beneficial ownership of that specific property.  *Oxford Capital Corp.*, 211 F.3d at 284.  Federal tax liens attach "not only to the property and rights to property owned by the delinquent taxpayer, but also property held by a third party if it is determined that the third party is holding the property as a nominee or alter ego of the delinquent taxpayer."  *Spotts v. United States*, 429 F.3d 248, 251 (6th Cir. 2005) (citing *G.M. Leasing Corp. v. United States*, 429 U.S. 338 (1977)).  As one federal district court has explained, "[f]ocusing on the relationship between the taxpayer and the

14

property, the [nominee] theory attempts to discern whether a taxpayer has engaged in a sort of legal fiction, for federal tax purposes, by placing legal title to property in the hands of another while, in actuality, retaining all or some of the benefits of being the true owner." *Baum Hydraulics Corp. v. United States*, 280 F. Supp. 2d 910, 916 (D. Neb. 2003).

In evaluating whether property is held in the name of a nominee, courts in the Tenth Circuit consider the following factors: (1) whether inadequate or no consideration was paid by the nominee; (2) whether the property was placed in the nominee's name in anticipation of a lawsuit or other liability while the transferor remains in control of the property; (3) whether there is a close relationship between the nominee and the transferor; (4) whether they failed to record the conveyance; (5) whether the transferor retained possession; and (6) whether the transferor continues to enjoy the benefits of the transferred property. *Holman v. United States*, 505 F.3d 1060, 1065 n.1 (citing *Spotts v. United States*, 429 F.3d 248, 253 n.2 (6th Cir. 2005)).

Plaintiff argues that, other than the fact that the purported transfer to "In God We Trust" was recorded, all the other indicators of a nominee relationship are present in this case.

### a.     *No Consideration was Paid for the Transfer*

There is no dispute that no consideration in money or money's worth was paid by the Trust for the transfer of the property. (Mot., Bailey Decl, Ex. 1 at 63:13–18, 65:6–66:6, Ex. 3.)

### b.     *Anticipated Litigation Concerning Federal Taxes*

Defendant Martens had begun his pattern of noncompliance with the federal tax laws prior to his purchase of the subject property and creation of the Trust. Defendant Martens began soliciting "advice" from counsel who would support his illegal scheme to evade federal taxes at least as early as 1991. (*Id.* at 71:6–73:14; Ex. 4.) Moreover, Defendant Martens began receiving

correspondence form the IRS explaining that he was in violation of the tax laws (including notices of resulting liens and assessments). (*Id.* at 69:19–71:8.)

In his response, Defendant Martens asserts that "his education/career back round [sic] . . . is not a lawyer, accountant or tax expert" and that he merely followed advised from those that professed hav[ing] knowledge and expertise in tax law." (Marten's Resp. at 8.) Plaintiff continues to assert that the "income tax system is a voluntary tax system" and that "[t]his is the first summons since [he] began research twenty years ago." (*Id.*) He asserts he "has never been informed of having broken any tax laws or [having] been in violation of any tax laws." (*Id.*) These arguments are belied by the evidence submitted by the plaintiff.

The court finds the undisputed evidence shows Defendant Martens did or should have anticipated litigation to ensue by his ceasing to file or pay their federal taxes.

### *c.     Relationship Between "In God We Trust" and Defendant Martens*

Plaintiff argues that, in reality, there is no "relationship" between Defendant Martens and the Trust because Defendant Martens effectively is the Trust. (Mot. at 15.) The court agrees. Based on the undisputed facts, it is clear that Defendant Martens procured the signature of his brother for the trust instrument as "trustor" but neither his brother nor other various persons named as having certain roles for the Trust ever participated in its function or signed documentation related to the Trust.

### *d.     Defendant  Martens Retained Possession of the Property*

It also is undisputed that Defendant Martens has retained possession of the property. The Martens have continued reside on the property and to pay for all associated upkeep and bills. (Mot., Bailey Decl., Ex. 1 at 28:11–19, 51:4–52:15, Ex. 2.).

### *e.     Defendant Martens Continues to Enjoy the Benefits of Possession*

Finally, it is undisputed that only the Martens family has resided in the property since the purchase in 1995. Defendant Martens admits that he continues to live in the property and that other than the homeowners' association, no one has impeded his family's use of the property. (*Id.*)

The undisputed facts establish that Defendant Martens is the true beneficial owner of the real property, and that interest is attachable by the federal tax liens.

### *3.     Transfer of Property to the Trust*

Finally, Plaintiff argues that, even if it were not the case that the Trust holds title to the real property, if at all, as a nominee of Martens, it is clear that the transfer was a fraudulent conveyance. (Mot. at 16–23.) Under the Colorado Uniform Fraudulent Conveyance Act,

> [a] transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation incurred, if the debtor made the transfer or incurred the obligation: (a) With actual intent to hinder, delay, or defraud any creditor of the debtor; or (b) Without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor: (I) Was engaged or was about to engage in a business or transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or (II) Intended to incur, or believed or reasonably should have believed that he would incur, debts beyond his ability to pay as they become due.

Colo. Rev. Stat. § 38–8–105(1).

Colo. Rev. Stat. § 38–8–102(5) defines a creditor as a person or entity who has a claim, defined as essentially any right to payment. The United States becomes a creditor in the context of a fraudulent conveyance as to the tax due for a taxable year as of the close of that taxable year. *Edelson v. Comm'r*, 829 F.2d 828 (9th Cir. 1987) (interpreting identical language). The liability for federal taxes which have accrued includes all taxes that accrued in or before the year of

17

transfer. The liability need only be accrued, and assessment of the taxes may be subsequent to the transfer. *Scott v. Comm'r*, 117 F.2d 36, 38 (8th Cir. 1941). The United States clearly is a creditor in this case under Colorado law.

The Colorado Statute defines a debtor as a person liable on such a creditor's claim, defines "property" as anything that can be subject to ownership, and a "transfer" as every means of disposing of property. Colo. Rev. Stat. §§ 38–8–102(7) and (13). Under this statute, Defendant Martens is a debtor who has transferred property.

Under Colo. Rev. Stat. § 38–8–106(1):

> A transfer made or obligation incurred by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made or the obligation was incurred if the debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange for the transfer or obligation and the debtor was insolvent at the time or the debtor became insolvent as a result of the transfer or obligation.

It is undisputed that the United States was a creditor of Defendant Martens in January 1996, when the purported transfer of the real property to the Trust occurred, based on his failure to pay his federal income tax obligations incurred for several years prior to that date. (Mot., Dyson Decl., ¶ 19) Moreover, the Trust did not pay consideration for the property. (Mot., Bailey Decl., Ex. 1 at 63:13–18, 65:6–66:6, Ex. 3.) Finally, Defendant Martens was insolvent at the time. (*See id.* at 67:13–15, 68:19–22, 70:3–8, 70:21–71:8, 91:4–93:18; Dyson Decl., ¶ 18.)

In his response, Defendant Martens claims that "consideration" for the transfer was the "the right to live in" the residence. (Marten's Resp. at 8.) Defendant Martens does not point to any evidence or authority construing his right to reside in his own property as consideration. Moreover, Defendant makes no showing that his right to live in his own property constituted "reasonably equivalent value" under Colo. Rev. Stat. § 38–8–106(1).

The court agrees that the transfer of property to the Trust was fraudulent. Under Colo. Rev. Stat. § 38–8–108, a creditor may obtain "[a]voidance of the transfer or obligation to the extent necessary to satisfy the creditor's claim." As such, Plaintiff United States is entitled to have the fraudulent transfer of the real property to the Trust set aside.

Because the court recommends that Plaintiff's Motion for Summary Judgment be granted, it need not address Plaintiff's alternative Motion for Entry of Default Judgment as to the Trust.

## CONCLUSION

Based on the foregoing, this court respectfully

**RECOMMENDS** that Plaintiff the United States of America's "Motion for Summary Judgment" (Doc. No. 48) be **GRANTED**.

## ADVISEMENT TO THE PARTIES

Within fourteen days after service of a copy of the Recommendation, any party may serve and file written objections to the Magistrate Judge's proposed findings and recommendations with the Clerk of the United States District Court for the District of Colorado. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995). A general objection that does not put the district court on notice of the basis for the objection will not preserve the objection for *de novo* review. "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review." *United States v. One Parcel of Real Prop. Known As 2121 East 30th Street, Tulsa, Okla.*, 73 F.3d 1057, 1060 (10th Cir. 1996). Failure to make timely objections may bar *de novo* review by the district judge of the magistrate judge's proposed

findings and recommendations and will result in a waiver of the right to appeal from a judgment of the district court based on the proposed findings and recommendations of the magistrate judge. *See Vega v. Suthers*, 195 F.3d 573, 579–80 (10th Cir. 1999) (a district court's decision to review a magistrate judge's recommendation *de novo* despite the lack of an objection does not preclude application of the "firm waiver rule"); *One Parcel of Real Prop.*, 73 F.3d at 1059–60 (a party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for *de novo* review by the district court or for appellate review); *Int'l Surplus Lines Ins. Co. v. Wyo. Coal Ref. Sys., Inc.*, 52 F.3d 901, 904 (10th Cir. 1995) (by failing to object to certain portions of the magistrate judge's order, cross-claimant had waived its right to appeal those portions of the ruling); *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (by their failure to file objections, plaintiffs waived their right to appeal the magistrate judge's ruling); *but see, Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require review).

Dated this 23rd day of February, 2016.

BY THE COURT:

Kathleen M. Tafoya
United States Magistrate Judge